IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

**DESIRE KRISTIN BROWN**                                                                    **PLAINTIFF**

V.                                    CASE NO. 3:18-CV-3022

**REBECCA NOVAK, Individually and in her
Official Capacity; KIMBERLY FLOWERS,
Individually and in her Official Capacity;
MARK BAILEY, Individually and in his
Official Capacity; RANDY P. MAYFIELD,
Individually and in his Official Capacity;
CARROLL COUNTY, ARKANSAS; and
JOHN DOES I–IV, Individually and in their
Official Capacities**                                                                      **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Currently before the Court are:

- a Motion for Summary Judgment (Doc. 29), Brief in Support (Doc. 30), and Statement of Indisputable Material Facts in Support (Doc. 31), all filed by Defendants Kimberly Flowers, Mark Bailey, Randy Mayfield, and Carroll County (collectively, "Carroll County Defendants"); and a Response (Doc. 41), Brief in Support of Response (Doc. 42), and Response to Defendants' Statement of Indisputable Material Facts (Doc. 43), all filed by Plaintiff Desire Kristin Brown; and

- a Motion for Summary Judgment (Doc. 32), Statement of Undisputed Material Facts (Doc. 33), and Brief in Support (Doc. 34), all filed by Defendant Rebecca Novak; and a Response (Doc. 44), Brief in Support of Response (Doc. 45), and Statement of Disputed Facts (Doc. 46), all filed by Ms. Brown.

For the reasons given below, both Motions are **GRANTED**.

1

## I. BACKGROUND

On January 6, 2017, Plaintiff Desire Brown's husband, Billy Brown, called the police and reported that during an argument with Ms. Brown earlier that day, she had pointed a gun at him and at one of their children. After interviewing Mr. Brown in a parking lot, deputies from the Carroll County Sheriff's Department (including Kimberly Flowers and Mark Bailey) went to the Browns' residence, along with an investigator from the Arkansas Department of Human Services ("DHS") named Rebecca Novak. There, while interviewing Ms. Brown, they found several unsecured and easily accessible guns throughout the house. At the conclusion of this interview, Ms. Brown was arrested and taken to the Carroll County jail for aggravated assault on a family member, endangering the welfare of a minor, obstructing governmental operations, and terroristic threatening. Mr. Brown was also arrested for endangering the welfare of a minor and for being a felon in possession of a firearm.

A protective hold was placed on the Browns' children by DHS, and on January 9, 2017, Ms. Novak submitted an affidavit to the Carroll County Circuit Court in support of a DHS petition for emergency custody. That Court issued an ex parte order granting the petition two days later; and then, following a hearing on February 23, 2017, where all parties were present and represented by counsel, it found that the children were dependent-neglected.

Ms. Brown's initial appearance on her criminal charges also occurred on January 9, at which time a judge set her bond at $75,000. Ms. Brown was unable to post that bond. On February 3, an Information was filed formally charging her with accomplice liability for Mr. Brown's unlawful possession of a firearm, and with aggravated assault on

2

a family member, terroristic threatening, and endangering the welfare of a minor. Three days later, she was released from jail after her bond was reduced to $5,000. Four and a half months after that, the State of Arkansas moved for nolle prosequi of the Information. The State's motion was granted, and the charges against Ms. Brown were dismissed.

Ms. Brown filed the instant lawsuit on February 9, 2018. Her Amended Complaint styles her claims against these Defendants as six counts: (1) malicious prosecution; (2) cruel and unusual treatment during her incarceration in violation of the Eighth Amendment to the United States Constitution; (3) civil conspiracy; (4) violation of substantive due process; (5) outrage; and (6) punitive damages. Ms. Novak and the Carroll County Defendants filed their respective motions for summary judgment on December 28, 2018, seeking dismissal of all claims. Ms. Brown responded to both motions on January 25, 2019. No replies were filed in support of either motion. Both motions are now ripe for decision.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the facts in the light most favorable to the non-moving party, and give the non-moving party the benefit of any logical inferences that can be drawn from the facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1997). The moving party bears the burden of proving the absence of any material factual disputes. Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). If the moving party meets this burden, then the non-moving party must "come forward with 'specific facts showing that there is a

3

genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting then-Fed. R. Civ. P. 56(e)) (emphasis removed). These facts must be "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The nonmoving party must do more than rely on allegations or denials in the pleadings, and the court should grant summary judgment if any essential element of the prima facie case is not supported by specific facts sufficient to raise a genuine issue for trial." *Register v. Honeywell Fed. Mfg. & Techs., LLC*, 397 F.3d 1130, 1136 (8th Cir. 2005) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 324 (1986)).

## III. DISCUSSION

The Court will begin its analysis with Ms. Brown's constitutional claims. Then, the Court will discuss Ms. Brown's state-law claims.

### A. Constitutional Claims

Ms. Brown has alleged violations of various rights guaranteed to her under the United States Constitution, and she has brought these claims against the Defendants in both their individual and official capacities. All of the individual-capacity Defendants have asserted the defense of qualified immunity against these claims. When a government official is sued in her individual capacity for violating someone's federal constitutional rights under color of law, then under the doctrine of qualified immunity, that official is immune from claims for damages arising from the alleged violation unless both of the following prongs are satisfied: (1) "the facts that a plaintiff has alleged . . . make out a violation of a constitutional right"; and (2) "the right at issue was clearly established at the time of the defendant's alleged misconduct." *See Pearson v. Callahan*, 555 U.S. 223,

4

232 (2009). When courts perform this qualified-immunity analysis, it is often preferable to consider the "violation" prong before considering the "clearly established" prong, but it is not mandatory for them to do so. See id. at 236.

Ms. Brown's claim under the Fourth Amendment, as applied to the states through the Fourteenth Amendment, appears to be premised on the fact of her warrantless arrest. "A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least arguable probable cause." Ulrich v. Pope Cnty., 715 F.3d 1054, 1058 (8th Cir. 2013) (quoting Borgman v. Kedley, 646 F.3d 518, 522–23 (8th Cir. 2011)) (internal quotation marks omitted). Whether probable cause exists is determined by whether "the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the [arrestee] has committed or is committing an offense." Id. And even when an arrest is based on a *mistaken* belief that probable cause exists, there is still "arguable" probable cause "if the mistake is objectively reasonable" under the circumstances. See id. (internal quotation marks omitted).

Here, the evidence in the record shows that Ms. Brown's arrest, and the charges brought against her, were all indisputably supported by probable cause. There is unrebutted and undisputed evidence in the record that on the day of her arrest, the arresting officers had received an unsolicited report from Ms. Brown's husband that she had pointed a gun at him and at their child, and that she had threatened to shoot him. See Doc. 31-1, pp. 7–9. Ms. Brown insists that she never pointed a gun at or threatened to shoot anyone; but she does not dispute that Mr. Brown made that allegation to the officers. There is also unrebutted and undisputed evidence that when the officers

interviewed Ms. Brown, they found unsecured and unloaded guns and ammunition that were potentially accessible by the children inside her house. *See* Doc. 31-1, p. 7; Doc. 31-2, p. 55. Ms. Brown not only conceded this fact in her deposition—she also conceded that this state of affairs was dangerous for her children. *See* Doc. 31-2, p. 57. Ms. Brown also admitted in her deposition that she had known since 2016 that her husband was a convicted felon. *See* Doc. 31-2, p. 16. Under these circumstances, it was objectively reasonable for the arresting officers to believe that Ms. Brown and her husband had both committed multiple criminal offenses that day.

Ms. Brown asserts that the officers unlawfully entered her residence without a warrant, and that there would have been no probable cause if they had not done so. But setting aside whether she is correct about the latter proposition (which ignores her husband's police report and her own admission to officers before entering the residence that there was a gun "on top of the safe in the house," *see* Doc. 31-2, p. 51), she can plainly be heard, on Deputy Flowers' body camera recording, replying "that's fine" in response to an officer's suggestion to her of "let's go in the house . . . is that good?". *See* Doc. 35, at 15:43:50. Thus, there is no reasonable dispute of fact that Ms. Brown consented to warrantless entry of her residence by these officers; and it is of course well established that the Fourth Amendment does not require police officers to obtain a warrant before entering a residence when they have obtained consent to do so from someone with apparent authority to provide that consent. *See, e.g., United States v. Almeida-Perez*, 549 F.3d 1162, 1169–70 (8th Cir. 2008) (collecting cases).

Ms. Brown also argues that the arresting officers failed to conduct an adequate investigation, and ignored exculpatory evidence. But it is not at all clear to the Court what

6

she believes this exculpatory evidence to be. The only example she provides is her clean prior criminal record as contrasted with her husband's prior felony record. But obviously crimes are frequently committed by persons with no prior criminal record; and just as obviously, investigators on her case quickly learned of her husband's criminal record, given their decision to formally charge Ms. Brown with accomplice liability for her husband's unlawful possession of a firearm. *See* Doc. 31-2, p. 174. In sum, there was no constitutional violation associated with Ms. Brown's arrest.

Ms. Brown's substantive due process claim appears to be premised in part on the loss of her employment because of her arrest and detention, and in part on the removal of her children from her custody. Regarding the former premise, the Court has already found there was probable cause to support her arrest and detention. As for the latter premise, the Eighth Circuit has "repeatedly held that when a state official takes an action that would otherwise disrupt familial integrity he or she is entitled to qualified immunity if the action is properly founded upon a reasonable suspicion of child abuse." *See K.D. v. Cnty. of Crow Wing*, 434 F.3d 1051, 1056 (8th Cir. 2006). "In cases in which continued parental custody poses an imminent threat to the child's health or welfare, emergency removal of children without a court order is constitutionally permitted." *See id.* Here, as already noted, Ms. Brown conceded in her deposition that the presence of unsecured firearms in her home was dangerous for her children; and the same facts supporting probable cause for Ms. Brown's arrest for, *inter alia*, endangering the welfare of a minor, likewise made Ms. Novak's suspicion of child abuse a reasonable one.

Ms. Brown argues that Ms. Novak failed to follow DHS policies during the removal and placement proceedings. She does not point to any particular policy that Ms. Novak

7

allegedly failed to follow, except for the requirement that relatives be notified of the proceedings, and that efforts be made to place removed children with relatives. But Ms. Novak testified in her deposition that she is an investigator whose duties do not encompass such matters, and whose role in an investigation ends once removal has been adjudicated; and Ms. Brown has not offered any evidence to undermine or call that proposition into question. *See* Doc. 35-1, pp. 35–38, 44–55. There also is no evidence, and Ms. Brown does not appear to contend, that any individual Defendants other than Ms. Novak played any meaningful role in the removal of the children. In other words, there is no evidence that any individually-named Defendant in this case committed any constitutional violation with respect to the removal of Ms. Brown's children.

Ms. Brown's Eighth[1] Amendment claim is premised on the conditions of her confinement in the Carroll County jail, where she contends she was placed in an excessively cold cell with feces on the wall, and refused food, nourishment, and medical care despite being pregnant. But whatever the conditions of her confinement were, there is no evidence in the record that any of these individually-named Defendants had anything to do with them. Thus, there is no basis for imposing individual liability on any of these Defendants for whatever mistreatment Ms. Brown may have suffered at the Carroll County jail.

---

[1] The Court questions whether the Eighth Amendment is the proper vehicle for this claim, rather than the Fourteenth Amendment. *See, e.g.*, *Ervin v. Busby*, 992 F.2d 147, 150 (8th Cir. 1993) ("[A]s a pretrial detainee, Ervin's claim is analyzed under the due process clause of the fourteenth amendment rather than the eighth amendment."). But regardless, "[p]retrial detainees are entitled to at least as much protection under the Fourteenth Amendment as under the Eighth Amendment." *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004).

To recap, then: all named Defendants have qualified immunity from the claims that Ms. Brown has brought against them in their individual capacities for alleged violations of her constitutional rights. As for her official-capacity claims premised on the same alleged violations, those must be construed as claims against Carroll County and the State of Arkansas. *See Monell v. Dept. of Social Servs. of City of N.Y.*, 436 U.S. 658, 690 n.55, 694 (1976). Under the Eleventh Amendment, the State of Arkansas enjoys sovereign immunity from claims for damages arising from alleged constitutional violations. *See, e.g., Bunch v. Univ. of Ark. Bd. of Trustees*, 863 F.3d 1062, 1067 (8th Cir. 2017).

Counties, on the other hand, may be liable for deprivations of constitutional rights, but only when the deprivation was caused by the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *See Monell*, 436 U.S. at 690 & nn.54–55, 694. But as already discussed above, Ms. Brown has not shown any deprivation of her constitutional rights at all with respect to her arrest or the removal of her children. Regarding the conditions of her confinement, Ms. Brown has not pointed to any particular policy that would accord with the treatment she claims to have received at the Carroll County jail, nor has she put on any evidence, beyond the individual instances she is alleged to have experienced personally, of "a pattern of 'persistent and widespread' unconstitutional practices which became so 'permanent and well settled' as to have the effect and force of law" at the Carroll County jail. *See Jane Doe A by and through Jane Doe B v. Special School Dist. of St. Louis Cnty.*, 901 F.2d 642, 646 (8th Cir. 1990) (quoting *Monell*, 436 U.S. at 691). Thus she cannot establish liability by Carroll County for any deprivations of

her constitutional rights that she may have experienced while detained at the Carroll County jail.

To summarize: all of Ms. Brown's constitutional claims must be dismissed, both those brought against Defendants in their individual capacities, as well as those brought against Defendants in their official capacities. The Court will now turn to Ms. Brown's state-law claims.

### B. State-Law Claims

Ms. Brown has brought as many as four claims under Arkansas law: malicious prosecution, outrage, civil conspiracy, and punitive damages. It is not clear to the Court whether the claim Ms. Brown has styled as one for "malicious prosecution" refers to the Arkansas tort by that name, or rather simply to a claim for violation of her rights under the Fourth and Fourteenth Amendments as already discussed above. But regardless, she cannot make out an Arkansas tort claim for malicious prosecution, because an essential element of that claim is that there be "absence of probable cause for the proceeding." *See Sundeen v. Kroger*, 355 Ark. 138, 142 (2003). This Court has already found in the preceding subsection of this Opinion and Order that there is no material dispute that probable cause existed here.

As for Ms. Brown's claim for outrage, that tort has four elements:

(1) the actor intended to inflict emotional distress or knew or should have know that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Kiersey v. Jeffrey*, 369 Ark. 220, 222 (2007) (internal quotation marks omitted). The Arkansas Supreme Court "gives a narrow view to the tort of outrage, and requires clear-cut proof to establish the elements in outrage cases." *Id*. This Court is unaware of any Arkansas cases holding or even implying that it is "extreme and outrageous" for a state actor to make an arrest based on probable cause or to initiate removal proceedings based on reasonable suspicion of child abuse or imminent harm to a child, and it is inconceivable to this Court that the Arkansas Supreme Court would ever make such a holding. And given that—as discussed in the preceding subsection—Ms. Brown has not introduced any evidence that any of the named Defendants played any role in the conditions of her confinement, she cannot satisfy the element of outrage requiring that "the actions of the defendant were the cause of the plaintiff's distress."

As for Ms. Brown's claim for "civil conspiracy," it is not clear to the Court whether she is asserting the Arkansas tort by that name, or a federal cause under 42 U.S.C. § 1983. But either way, the claim must be dismissed. The Arkansas tort is not actionable in and of itself, but rather must be predicated on some injury that was inflicted on Ms. Brown pursuant to the alleged conspiracy. *See Ballard Grp., Inc. v. BP Lubricants USA, Inc.*, 2014 Ark. 276, at \*17–\*18. The federal cause is similarly derivative, and must be predicated on an actual deprivation of a constitutional right or privilege. *See Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999). As already discussed, Ms. Brown has not introduced any evidence that any of these Defendants had anything to do with her conditions of confinement, and she has not shown that she suffered any other legal wrong or actionable injury.

Finally, Ms. Brown's sole remaining count—"Count VI Punitive Damages," *see* Doc. 19, p. 23—is a remedy, not a cause of action. And as all her other claims have been dismissed, there is no basis for awarding it.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that the Motion for Summary Judgment (Doc. 29) filed by Defendants Kimberly Flowers, Mark Bailey, Randy Mayfield, and Carroll County, and the Motion for Summary Judgment (Doc. 32) filed by Defendant Rebecca Novak are both **GRANTED**. Judgment will be filed contemporaneously with this Order.

**IT IS SO ORDERED** on this 5th day of March, 2019.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE